```
            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
        v.                  )   CRIMINAL NO. 05-10078-NMG
                            )
DARRYL DOWDELL              )
         Defendant          )
```

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### Introduction

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Donald L. Cabell, opposes the defendant's motion to dismiss. The defendant argues in his supplemental memorandum that the history of his state prosecution coupled with the pretrial history of this federal prosecution have resulted in a violation of his Fifth and Sixth Amendment rights, and a violation of the Speedy Trial Act (STA). AS discussed below, these claims are meritless.

### Relevant Facts

The government does not dispute most of the defendant's factual assertions. As of July 16, 2001, Joao Monteiro was a Boston Housing Authority police officer, i.e., a municipal employee. He worked, though, as a Task Force Officer with the Drug Enforcement Agency (DEA). In that role he and others investigated violations of **both** state and federal controlled

substances laws in and around the city of Boston. Consequently, of those investigations that resulted in criminal prosecutions, some began and ended in state court, some began and ended in federal court, and some began in state court and ended in federal court.

On July 16, 2001, the defendant allegedly sold Officer Monteiro 6 bags of cocaine. On March 25, 2002, Dowdell was indicted by a Suffolk County grand jury. On or about October 14, 2004, the defendant was sentenced to 27 months in state prison for an unrelated drug conviction.

On November 17, 2004, the government initiated the charges in this case by way of complaint. One month later, on December 17, 2004, the state dismissed its charges against the defendant in light of the federal prosecution.

On February 9, 2005, the defendant wrote a letter to the "Law Clerk" of Magistrate Judge Alexander's clerk complaining about the state prosecution and its dismissal.

On February 22, 2005, the defendant made a formal request under the Interstate Agreement on Detainers (IAD) that he be brought from state jail to federal court to resolve the criminal charges against him.[1]

---

[1] Although the defendant does not allege one, it bears noting that there was no violation of the IAD here. The IAD provides among other things that when a defendant is in custody and indicted in another jurisdiction for an offense that causes a
(continued...)

On March 22, 2005, the defendant was brought into federal court. Based on the docket and the undersigned AUSA's recollection, the defendant waived his rights under the IAD and was returned to state custody. The defendant was indicted by a federal grand jury the following day.

On July 10, 2006, the undersigned AUSA spoke to ADA Terrence Reidy regarding assertions attributed to him in the affidavit submitted along with the defendant's supplemental memorandum. ADA Reidy has never prosecuted the defendant; on the contrary, he is familiar with the defendant because he was investigating a case in which another man allegedly shot the defendant.

ADA Reidy stated that the conversation he had with Attorney Bourbeau lasted only a few minutes and took place between various court hearings. He stated that the conversation was more informal rather than formal and that no one explained that the purpose of the conversation was to create an affidavit for court submission.

With respect to specific assertions, ADA Reidy stated that he disagrees that he said that the "drug case arose out of a

---

[1](...continued)
detainer to be placed on him, the other offense must be tried within 180 days of the prisoner's written request for disposition, 18 U.S.C. app. 2, § 2 art. III(a), or within 120 days of his arrival in the receiving jurisdiction, 18 U.S.C. app. 2, § 2 art. IV(c). Here, the defendant waived his rights under the IAD at the time of his initial appearance, rendering it inapplicable for purposes of the motion to dismiss.

federal investigation" or that "it was always a federal investigation."  ADA Reidy stated that cases investigated by the DEA are routinely prosecuted in the state court.  He stated that if he indicated in any way that he was "unsure why it was prosecuted in state court," it merely meant that he, as someone who was not involved in the prosecution itself, was not privy to discussions as to where the case should be prosecuted, and, therefore, did not know what factors led to the decision to prosecute the case in state court.  Finally, ADA Reidy disagrees that he stated or indicated that the case "was returned to federal court at the federal authorities [sic] request."  If anything, he would merely have expressed his understanding that the state case was dismissed because the federal government initiated charges.

### **Analysis**

None of the defendant's constitutional and Speedy Trial rights have been violated.  As the government argued previously, because the STA clock does not begin to run until the defendant's initial appearance in the federal case, regardless of whether the defendant previously was charged, tried and/or convicted or acquitted of the same charges in state court, it is utterly immaterial whether the defendant was first charged by the state.  See  United States v. Marler, 756 F.2d 206, 212-213 (1st Cir. 1985); United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995);

4

United States v. Shahryar, 719 F.2d 1522, 1525, (11th Cir. 1983). This is especially notable because the defendant's motion does not implicate or include any of the time period from the defendant's initial appearance on March 22, 2005 to the present.

To be sure, the defendant does, in arguing that his 5th Amendment due process rights have been violated, ask the Court to nonetheless view the state prosecution as part of the federal prosecution because the DEA's participation in the investigation is proof that the case has always been federal in nature. The defendant does not ever explain why this fact would matter and he cites no cases supporting the proposition that a state prosecution can be viewed as part and parcel of a federal prosecution for due process or STA purposes where the investigation underlying the prosecution(s) was conducted in part by a federal agency.

Further, although the defendant glosses over the fact that the case **was** first prosecuted in the state court, this fact alone is demonstrative proof that the case was not exclusively federal in nature even if the DEA was involved. Put another way, if the case was in fact solely a "federal case" from the beginning, it never would have been prosecuted in the state courts. But it was, of course, and the defendant's argument is thus illogical *a priori*. In fact, cases investigated by the DEA **are** routinely prosecuted in the state courts. See e.g., Commonwealth v.

Rosario, 444 Mass. 550, 829 N.E.2d 1135 (2005); Commonwealth v. Gonzalez, 426 Mass. 313, 688 N.E.2d 455 (1997); Commonwealth v. Motta, 424 Mass. 117, 676 N.E.2d 795 (1997); Commonwealth v. Cast, 407 Mass. 891, 556 N.E.2d 69 (1990); Commonwealth v. Caso, 377 Mass. 236, 385 N.E.2d 979 (1979); Commonwealth v. Teti, 60 Mass.App.Ct. 279, 801 N.E.2d 279 (2004); Commonwealth v. Gomez, 2002 WL 31770429 (Mass.Super.); Commonwealth v. Perez, 2001 WL 721639 (Mass.Super.).

Similarly, there was no 6th Amendment violation. The defendant appears to argue that his speedy trial rights should have begun on December 17, 2004 when the state dismissed charges against him, rather than March 22, 2005, when he had his initial appearance on the federal complaint. However, as noted above, this argument must fail under Marler and its progeny because the speedy trial clock just does not begin to run before the defendant's appearance, and the defendant does not argue that any time following his initial appearance on March 22, 2005 has resulted in a violation of any of his protectible interests.

Regardless, the government certainly did not "thwart" the defendant's efforts to "perfect his due process rights." Def.'s Mem. at p. 7. As the docket reflects, the government filed a petition to have the defendant brought in for his appearance after the defendant made a formal request under the IAD, and there is no suggestion that a violation of the IAD subsequently occurred. On the contrary, the system worked the way it is

supposed to work under the IAD.  The defendant learned of the federal charges while in state prison and made a request under the IAD to procure his appearance.  Thereafter, the defendant waived his rights under the IAD, returned to state prison to finish his sentence, and then came into federal custody when he completed his sentence.

Finally, there was no violation of the STA at 18 U.S.C. §3161(b).  The STA requires that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).  That provision is not applicable here, though, because the government did not arrest or summons the defendant when it obtained the criminal complaint.  Rather, it petitioned the court on March 14, 2005 to issue a habeas to procure the defendant for his initial appearance.  Even treating the petition as a summons, the indictment was returned on March 23, 2005, well within 30 days from the date it was sought.

The defendant argues that the Court should treat the Commonwealth's dismissal of the state drug charges on December 17, 2004 as a "summons" but that argument is wholly untenable and the defendant fails to cite any case in support of his position. The plain language of §3161(b) is also not helpful to him because requires only that the government file an indictment or

information within thirty days of an individual's arrest or summonsing, and the Court must presume Congress intended the word "summons" to have its ordinary, well-understood meaning. See, e.g., Perrin v. United States, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). The Court should decline the invitation to make new law.

### Conclusion

In light of the foregoing, the Court should deny the defendant's motion to dismiss.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

/s/Donald L. Cabell
DONALD L. CABELL
Assistant U.S. Attorney