```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA )
                         )
                         )
         v.              )      CRIM. NO. 05-10078-NMG
                         )
DARRYL DOWDELL           )
```

### GOVERNMENT'S OPPOSITION TO MOTION IN LIMINE TO PRECLUDE INTRODUCTION OF DEFENDANT'S UNALLEGED BAD ACTS

Defendant Darryl Dowdell has moved under Rule 404(b) to preclude the government from introducing evidence of dealings that Dowdell had with the undercover agent in this case 10 days before the crack cocaine sale at issue here.  His only claim is that Dowdell's conduct (in which Dowdell was first seen counting out money with Robert "T.D. White, was then identified by White associate as a source for crack cocaine in one meeting, and spoke directly with the UC for the purpose of setting up another sale of crack in a second meeting that same day) is prohibited propensity evidence and should therefore be excluded.

In fact, this evidence is intrinsic to the crime charged and therefore admissible without regard to the strictures of Rule 404(b). This evidence will also be admissible to corroborate the testimony of its undercover agent and to explain the basis on which he approached Dowdell on July 16 and the his familiarity with and ability to identify him. Because the evidence of what happened on July 6 is admissible on any one of these three bases,

the motion in limine should be denied.

### A. BACKGROUND

On November 14, 2004 the defendant was named in a one-count criminal complaint charging him with a violation of 21 U.S.C. §841. Both the complaint and the affidavit that supported it made clear that the government was alleging that the defendant sold cocaine base, a/k/a "crack cocaine" to a DEA undercover agent ("the UC") on July 16, 2001.

On March 23, 2005, a grand jury returned an indictment against Dowdell based on this same transaction. Although the transaction involved cocaine base, the indictment merely alleged that the defendant distributed "cocaine."

All of the events giving rise to these charges arose out of investigations undertaken in 2001 attacking drug trafficking in and around the Whittier Street Project near Ruggles Square in Boston. During these investigations, DEA Task Force Agent Joao Monteiro (hereinafter, "the UC") made controlled purchases of drugs from various individuals (including Dowdell and White). The buys were made out of an undercover car equipped with audio and video recording equipment. The UC also wore a transmitter so as to enable other surveillance officers to monitor the buys. Conversations coming over the transmitter were also recorded as they occurred.

The present case involves such operations on two separate

dates (both of which will be the subject of trial testimony from the UC).

On the afternoon of July 6, 2001, the UC made two buys from Robert White (one with the assistance of Dowdell). The two buys were separated by approximately an hour. When the UC approached White the first time on July 6, White and Dowdell were counting money together. After noticing the UC, White immediately approached the UC and indicated (after consulting with Dowdell and then getting in the car with the UC in preparation of making a sale), that Dowdell was in the business with him. White then proceeded to sell the UC drugs and urged him to come back later that day to do another deal. He also told the UC to see him or Dowdell (described in that conversation as a "dark skinned dude" and later as White's cousin, "Smoke") for more crack cocaine.

And that's exactly what the UC did. Within an hour, the UC returned to Whittier Street Project, saw Dowdell (who he also referred to as Smoke, and asked Dowdell if he could buy crack cocaine. Smoke told the UC to wait for a minute, and the UC watched as Dowdell rode his bicycle to White. After speaking with Dowdell, White came over to the UC, got back in his car, and sold him more crack cocaine. Hence in the first July 6 deal, White invited the UC to contact Dowdell ("Smoke") to make future buys. In the second deal that day, the UC did, and Dowdell helped set up the buy from White that then took place.

The UC met with Dowdell again 10 days later (on July 16) when the charged buy took place. After driving into the area of the Project (and not finding White), the UC went up to Dowdell (referring to him on the video as "Smoke" and asked him where White (who the UC referred to as "TD") was. After getting directions from Dowdell, and making it appear that he had looked for White but was unable to find him, the UC returned to the area where Dowdell was, approached Dowdell for a second time, and bought the crack cocaine that is the subject of the charges currently before the Court.[1]

**ARGUMENT**

1. <u>The July 6 evidence is directly relevant to and inextricably intertwined with the charged offense</u>

The evidence of the UC's interaction with Dowdell on July 6 is directly relevant to the crime charged in the indictment and therefore admissible irrespective of the constraints of Rule 404. Because the charged offense involves a transaction 10 days later that took place in the same area and involved both Dowdell and White, and because the defendant is raising an identity offense in which the existence and nature of the UC's dealings with Dowdell (and thus his ability to recognize and identify him 10 days later) are crucial to the government's case, the July 6 evidence is relevant evidence that is both intrinsic to and

---

[1] DEA-6 reports describing these transactions have already been filed with the Court.

inextricably intertwined with the crime charged in the indictment.

By its terms, Rule 404(b) excludes only extrinsic evidence i.e, "evidence of *other* crimes, wrongs, or acts" where the probative value of the evidence is limited to the inference of "criminal propensity." United States v. Trenkler, 61 F.3d 45, 56 (1st Cir. 1995). Circumstantial evidence "intrinsic" to the crime for which the defendant is on trial is simply not governed by Rule 404(b). E.g., United States v. Tutiven, 40 F.3d 1, 4 (1st Cir. 1994); United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996)("Evidence intrinsic to the crime for which the defendant is on trial, accordingly, is not governed by Rule 404(b)"); United States v. Taylor, 284 F.3d 95, 103-04 (1st Cir. 2002) (affirming admission of testimony of gun because it was part and parcel of charged transaction); United States v. Candelaria-Silva, 162 F.3d 698, 703-04 (1st Cir. 1998) (evidence of flight from crime scene was intrinsic). See also United States v. Taylor 284 F.3d 95, 102 (1st Cir. 2002) (admitting reference to contract murder which was "an intrinsic part of [the] drug deal and the witness' account of the context and circumstances surrounding the deal.").

The July 6 evidence is intrinsic to the charged crime. On July 6, the undercover agent met with White, who identified Dowdell as someone from whom the UC could purchase drugs in his

absence.  The UC then met with Dowdell that same afternoon, and got assistance from him in locating White so that he could do another deal.  It was therefore these events that explain both why the UC approached Dowdell looking for White the following week, why Dowdell immediately had the conversations with the UC that he did, and why the drug transaction with Dowdell occurred as quickly and seamlessly as it did when the UC returned to the area.

"Evidence of other criminal acts [is] admissible . . . when [it is] so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged."  United States v. Currier, 821 F.2d 52, 55 (1st Cir. 1987); United States v. Veltmann, 6 F.3d 1483, 1498 (11th Cir. 1993) (Evidence of criminal activity other than offense charged is not prohibited extrinsic evidence if "necessary to complete story of crime, or evidence is inextricably intertwined with the evidence regarding the charged offense").  See also United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 50 (1st Cir. 2004)(upholding introduction of evidence against 404(b) challenge where evidence was introduced as part of... necessary description of the events leading up to the crimes).

The cause for admission here is even stronger because of the

identity defense.  The fact that the UC met with and spoke to Dowdell 10 days prior to the day of the charged offense demonstrates why the UC went to Dowdell and how he recognized him during the offense and after.  Because the extent of the UC's dealing with Dowdell in the period immediately surrounding the charged offense is critical to understanding both the events of July 16 and corroborates the basis for the UC's identification, it should be admitted.  See United States v. Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992)(rule 404(b) permits introduction of evidence for purely corroborative purposes on matters "significant to the government's case"); United States v. Everett, 825 F.2d 658, 660 (2nd Cir.1987) (admitting 404(b) evidence for corroborative purposes where the if the corroboration is "direct and the matter corroborated is significant").

    **2.**    **The admission of the July 6 evidence is not unfair**.

The defendant's claim under Rule 403 that the probative value of this evidence is somehow outweighed by prejudice, or the possibility of confusion or misleading the jury must also fail.  The defendant's obligation in advancing any such argument is to show that any prejudice is in fact "unfair" and "substantially outweighs" the probative value.  Although evidence of other crimes invariably prejudices a defendant, "the prejudice is frequently outweighed by the relevancy of the evidence. . . ."

United States v. Francesco, 725 F.2d 817, 822 (1st Cir. 1984) (citations omitted).  "The fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded, [or] there would be precious little left in the way of probative evidence in any case."  United States v. Carty, 993 F.2d 1005, 1011 (1st Cir. 1993).

Given this clear law, the defendant has utterly failed to make the showing required to exclude the contested evidence.  The fact that the July 6 evidence is so closely connected to the charged crime and explains how the events of July 16 arose confirm that the evidence is not Rule 404(b) evidence at all and that the Rule 403 balance sits squarely in the government's favor.  See United States v. Nickens, 955 F.2d 112, 125 (1st Cir. 1992) (critical issue is whether any prejudice is "unfair"); United States v. Garcia, 983 F.2d 1161, 1173 (1st Cir. 1993) (defendant's drug prior arrest admissible because probative value not substantially outweighed by danger of unfair prejudice). The fact that it is so important to establish the UC's familiarity with Dowdell on the identification defense also shows that this evidence must come in.[2]

---

[2]  The Court can minimize any potential danger of unfair prejudice caused by the admission of this evidence by issuing a limiting jury instruction regarding the proper relevance of the evidence.  The First Circuit has approved the use of such limiting instructions as an appropriate means of protecting a defendant against the possibility that a jury might draw improper conclusions from a defendant's prior bad acts. See, e.g., Garcia,
(continued...)

## **CONCLUSION**

Based on the foregoing, the government respectfully requests that the defendant's motion in limine be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/John A. Wortmann, Jr.
      JOHN A. WORTMANN, JR.
      Assistant U.S. Attorney

_____

---

² (...continued)
983 F.2d at 1173 ("district court handled the prior acts evidence with care, providing the jury with a limiting instruction . . . and again instructing the jury of the scope of prior acts evidence in his final charge."); Nickens, 955 F.2d at 125-126 ("given that the court minimized prejudice to [defendant] by giving clear limiting instructions to the jury, we are satisfied that the district court did not abuse its discretion in admitting the evidence of [defendant's] prior drug conviction.").