UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

*UNITED STATES OF AMERICA*

     *v.*                                Case No. 1:05-cr-10078 NMG

*Darryl DOWDELL,*
        *Defendant.*

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT**
OF MOTIONS IN LIMINE TO EXCLUDE HEARSAY
IDENTIFICATION AND UNCHARGED MISCONDUCT

Preliminary

Defendant DARRYL DOWDELL offers this supplemental memorandum in support of prior counsel's motions *in limine* to exclude the hearsay statements of Robert White (Doc. 30) and prior bad act evidence of Mr. Dowdell's presence in the vicinity of prior drug transaction (Doc. 31). This memorandum seeks to narrow the focus of the balancing analysis under FRE Rules 404b and Rule 403. The defense urges a solution to avoid what the First Circuit has called "bad acts overkill" (*US v. Frankhauser, infra,* 80 F.3d at 648). The video tape of the government's undercover agent and another suspect (containing hearsay identification and no observations of defendant) should be excluded. The government can identify Darryl Dowdell without offering prejudicial tapes, repeating hearsay or speculating about Mr. Dowdell's involvement in earlier drug crimes.

FACTS

Defendant Dowdell has moved *in limine* to exclude uncharged misconduct evidence and certain hearsay identification statements. The government has charged Mr. Dowdell only with selling drugs on July 16, 2001 and not ten days prior on July 6, 2001.

The defense expects the government to offer audio-visual evidence and testimony

1

creating an inference that defendant was involved in a prior uncharged narcotics sale on July 6. Task Force Agent Monteiro reports in his DEA-6 that when he first saw suspect Robert "TD" White and "Smoke" - "Smoke" is allegedly defendant's nick name - White and "Smoke" were counting money. TFA Monteiro reports that White negotiated a cocaine sale with TFA Monteiro, left Monteiro's car and spoke to "Smoke", returned to the Agent's car, mentioned "Smoke" as his cousin and the person to contact for drugs. (White's statement about "Smoke" is pure hearsay.) White then left the Agent's car again, went off with a man on a bicycle - not alleged to be defendant - and then came back to the Agent's car with the drugs.

The video evidence contains hearsay statements by Robert White - such as "that's my cousin Smoke" - and tells the officer to contact "Smoke" when White is not available. White's nervous demeanor and emaciated appearance indicate that he (White) is a drug user and drug dealer. The July 6 evidence, however, does not fairly place Mr. Dowdell in possession of drugs nor do they connect him with its sale. Dowdell is not visible on this tape at all. Such evidence is not necessary corroboration. It is prejudicial information that defendant is associated with a drug dealer/user. It is not probative of defendant conducting an alleged hand-to-hand sale with the agent ten days later.

ARGUMENT

POINT I:
ARGUMENT AND
COUNTOURS OF THE LAW

A.   Argument Summary

The government's video tape does not in itself have special relevance and, even if it did, it would not pass Rule 403's balancing test for unfair prejudice. The July 6

2

evidence does not overcome the "absolute bar" by being specially probative of an issue in the case -- such as intent or knowledge -- *without including bad character or propensity as a necessary link in the inferential chain*.  The video does not show Mr. Dowdell.  It a narcotics transaction in which a dissipated addict mentions defendants alleged (though not admitted) nick name while selling drugs to an agent.

This Circuit has had frequent cause to reverse or admonish the government for misuse of prior bad acts.  See, *e.g., United States v. Varoudakis*, 233 F.3d 113, 233 F.3d 113 (1 Cir. 2000)(discussed, *infra*)(reversing conviction and vacating judgment because admission of prior arson uncharged arson unfairly prejudicial and not harmless error); *Aguilar-Aranceta*, 58 F.3d 796, 798 (1 Cir. 1995)(discussed, *infra*) (conviction reversed for unfair prejudice where prior conviction for nearly identical conduct was found specially relevant); *Arias-Montoya*, 967 F.2d 708, 710(1 Cir. 1992)(discussed, *infra*)(finding unfair prejudice and error in admission of prior convictions/bad acts but not reversing because of overwhelming evidence, *e.g.*, possession, flight, inconsistent statements); *US v. Frankhauser,* 80 F.3d 641, 648 (1 Cir. 1996) (discussed, *infra*)(admonishment for "bad act overkill").  It has also recently denied interlocutory appeals from orders excluding prior bad acts evidence of highly probative uncharged misconduct .  See, *US v. Gilbert,* 229 F.3d 15 (1 Cir. 2000)(nurse accused of murdering patients by injection, excluding evidence of attempt to murder husband by injection)(discussed, *infra*).

The admission of evidence of involvement in uncharged crimes will inevitably prejudice the jury's consideration of charged conduct.  Even if the prior bad act evidence has "special relevance," it is nonetheless inadmissible if its probative value is

3

"substantially outweighed by the danger of," *inter alia*, "unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. Rule 403; *Aguilar-Aranceta*, 58 F.3d at 798. "The trial judge . . . must weigh the special relevance against the prejudicial risk, taking into account the likely hostile jury reaction that underlies the common law rule." *Frankhauser*, discussed, *infra,* citing US v. *Arias-Montoya*, 967 F.2d 708 at 714 (1 Cir. 1992).

B.      Contours of "Prior Bad Acts" Law

It is Hornbook law that evidence of a defendant's prior bad acts may not be admitted to prove his criminal character or propensity to commit crimes of the sort for which he is on trial.  Counsel sees the thrust of the government's July 6 evidence as involving defendant and placing him at a street location where illegal narcotics are sold.  The video tape - which does not show defendant - is wholly unnecessary for proving this portion of the government's case.  When prior bad act evidence is offered to prove a motive for the crime, "courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury." *US v. Varoudakis*, 233 F.3d 113, 233 F.3d 113 (1 Cir. 2000)(reversing conviction and vacating judgment because admission of prior arson uncharged arson not harmless error).  Rule 404(b) provides in relevant part: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . . Fed. R. Evid. 404(b).

To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in the case such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." *US v. Frankhauser*, 80 F.3d 641, 648 (1 Cir. 1996). As the text of Rule 404(b) indicates, prior bad act evidence may be specially relevant if, for example, it goes to the defendant's intent, knowledge, plan, absence of mistake, or identity. Probative value "must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged." *Id.,* citing *United States v. Fields*, 871 F.2d 188, 197 (1 Cir.), cert. denied, 493 U.S. 955 (1989). Additionally, prior bad acts may be admitted *in conspiracy cases* under 404(b) if they "explain the background, formation, and development of the illegal relationship." *US v. Escobar-De Jesus*, 187 F.3d 148, 169 (1 Cir. 1999). Secondly, under Rule 403, even if the bad acts evidence is specially relevant, it may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice exists where there is a danger that a jury may draw an improper inference (once a crook, always a crook) from the prior bad acts instead of focusing on the evidence of the elements of the crime charged. See, e.g., *US v. Moccia*, 681 F.2d 61, 63 (1 Cir. 1982)(the trial court's ruling on bad act evidence to avoid "likely hostile jury reaction that underlies the common law rule*."*); *US v. Frankhauser, supra; US v. Varoudakis*, 233 F.3d 113 (1 Cir. 2000); *US v. Guyon*, 27 F.3d 723, 728-29 (1 Cir. 1994); *US v. Arias-Montoya,* 967 F.2d 708, 709 (1 Cir. 1992).

The Government has taken the position that its prior bad acts evidence is "intrinsic" to the crime and not related to proving bad character or association with a

5

criminal element. The government cites cases such as Manning for the proposition that circumstantial evidence is *intrinsic* to the crime. See, Government's "Opposition to Motion", p. 5 (Doc 41) citing *US v. Manning*, 79 F.3d 212 (1 Cir. 1996). Typical of these cases, *Manning* involves the admissibility of drug packaging paraphernalia seized in an execution of a warrant in the defendant's home. Scales, bags and other circumstantial evidence of the crime charged were deemed admissible and not subject to balancing. *Id.* (Defendant Manning had taken the witness stand in his own defense and the Court allowed cross examination over objection about prior crimes. This, however, was judged on a Rule 403 basis and was *not* ruled "intrinsic" to the crime.)

The argument about "intrinsic" evidence of criminal conduct is subtle but unavailing in this case. The nature of the evidence the government seeks to use is anything but intrinsic; it is wholly extrinsic. The agent's prior view of a suspect may have limited relevance to its case but the July 6 is not in itself specially relevant (it is a video of another suspect). The tape does not show Mr. Dowdell counting money or meeting suspiciously with drug seller Robert White. The tape shows the drug addict White and records him talking about Mr. Dowdell. The government needs only the agent's testimony and does not the video of a different suspect to establish its agent's prior contact in the area and the investigative reason for returning to buy drugs from the target "Smoke".

POINT II:
UNFAIR PREJUDICE

A.  Significant Cases in this Circuit
    There are significant cases in this Circuit reversing for admission of unfairly prejudicial evidence of prior bad acts. These reversals occur even though "the admission

6

of Rule 404(b) evidence is committed to the sound discretion of the trial judge, [and the Circuits] will reverse on appeal only for abuse of discretion." *United States v. Garcia*, 983 F.2d 1160, 1172 (1st Cir. 1993).

    1.    *US v. Aguilar*

The First Circuit's holding in *Aguilar-Aranceta* stands for the proposition prior that bad acts evidence cannot be used to close the inferential chain for proving the government's case in chief - as it attempts to do in this case. See, *Aguilar-Aranceta*, 58 F.3d 796 (1 Cir. 1995). Bad acts evidence creates unfair prejudice where the government's case is weaker and more circumstantial (like the case at bar); there is heightened danger that the jury will rely on evidence of prior bad acts to infer guilt even though the government has no other evidence of elements of the offense.

Defendant Aguilar appeared at a United States Post Office to claim two registered packages. *Id.* She examined the return address labels and said "no me (sic) family." The Postal Clerk replied that it was up to her, the defendant, to take the packages or not. The defendant again said "no me (sic) family," and took the two packages. Immediately upon exiting the lobby of the Post Office defendant was detained and placed under arrest. The two packages defendant was carrying had been intercepted by a mail specialist earlier and found to contain approximately 224 grams of cocaine. Aguilar-Aranceta never opened the packages.

After a second trial, a jury convicted defendant Aguilar for possession of cocaine with the intent to distribute and defendant appealed. Under 21 U.S.C. Section(s) 841(a)(1), the government was required to show beyond a reasonable doubt that she knowingly possessed a controlled substance with the intent to distribute. The

government had presented evidence of Aguilar's earlier conviction for possession of cocaine. The trial court had admitted this evidence as relevant to the issue of whether defendant was in knowing possession of cocaine when she was arrested at the Post Office because the defendant's behavior - receipt of a mail package from Columbia - had been the same. The defendant had argued that all evidence pertaining to defendant's prior conviction served no other purpose than to demonstrate a propensity for criminal activity and should therefore have been excluded under Federal Rule of Evidence 404(b).

The First Circuit reversed defendant's conviction finding that the prior convictions were specially relevant but that their admission was nonetheless unfairly prejudicial. The court noted it had decided many cases surrounding the admissibility of extrinsic bad act evidence under Rule 404(b). *Aguilar*, supra, citing e.g., *US v. Guyon*, 27 F.3d 723, 728-29 (1 Cir. 1994); *US v. Arias-Montoya,* 967 F.2d 708, 709 (1 Cir. 1992). *US v. Fields*, 871 F.2d 188, 195-99 (1 Cir. 1989); *US v. Mateos Sanchez*, 864 F.2d 232, 234-38 (1 Cir. 1988); *US v. Oppon*, 863 F.2d 141, 144-48 (1 Cir. 1988); *US v. Moccia*, 681 F.2d 61, 63 (1 Cir. 1982). The *Aguilar* court explained its two-part test: (1) determine whether the evidence is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question - i.e., whether the evidence has some "special" probative value; and, if specially relevant, then (2) determine under Rule 403 whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice".

    2.    *US v. Varoudakis*

The First Circuit has reversed on prior bad acts evidence or upheld their exclusion more recently in *Varoudakis* and *Gilbert. US v. Varoudakis*, 233 F.3d 113 (1 Cir. 2000);

*US v. Gilbert,* 229 F.3d 15 (1 Cir. 2000). The *Varoudakis* court noted that it had focused historically on two factors to determine the *probative value* of prior bad act evidence: "the remoteness in time of the other act and the degree of resemblance to the crime charged." *Varoudakis, supra,* citing *Frankhauser*, 80 F.3d at 648, quoting *US v. Fields*, 871 F.2d 188, 197 (1 Cir. 1989). The *Varoudakis* court reversed the trial court's admission of Rule 404(b)/403 evidence of an uncharged automobile arson sixteen 16 months before the counts of conviction finding that such evidence was unfairly prejudicial and not harmless. The government had charged defendant Varoudakis with arson and conspiracy to commit arson in violation of 18 U.S.C. §§ 844(i) & 371, by contracting to burn down his restaurant, "Destinations," to collect insurance proceeds. Following his conviction, Varoudakis argued on appeal that the district court abused its discretion by admitting testimony of Varoudakis' long-time girlfriend and co-conspirator in the Destinations arson. The girlfriend's testimony was that she saw Varoudakis set fire to his leased car sixteen months before the Destinations fire. In response to a motion in limine filed by the defendant to exclude the car fire evidence, the trial court ruled that testimony about the car fire would be admissible to show Varoudakis' "plan, knowledge, and intent" in relation to whether he "knowingly participated in a common scheme to defraud." In support of this rationale, the trial court cited the government's allegations that Varoudakis committed both the car fire and the Destinations arson "for a financial motive" and with one of the "same conspirators, the girlfriend."

  3.  *US v. Gilbert*

In *Gilbert*, the First Circuit upheld the trial court's exclusion of two categories of bad acts evidence in denying a government interlocutory appeal. *US v. Gilbert,* 229 F.3d

15 (1 Cir. 2000)(nurse murdering chronically ill patients by injection in VA hospital). The government offered against nurse Gilbert detailed evidence of an attempt to murder her husband at the same time and by the same methods she was accused of using on her patients.  According to the indictment, Gilbert had killed four Ward C patients, and attempted to kill three others, by intravenously poisoning them with epinephrine injections.  (Epinephrine is a clear, odorless liquid is use for resuscitating patients in a state of cardiac arrest that causes a fatal rapid or irregular heartbeat when administered in excessive doses.)  *Id.*

      The government attempted to offer, and the First Circuit upheld exclusion of the following evidence:  In the fall of 1995, around the time defendant was administer fatal injections to her patients, defendant came home from work shortly after the aforementioned hospitalization with two syringes, one of which was filled with a clear, odorless liquid, and told her husband that she wanted to take a blood sample back to the VAMC for additional testing (she had allegedly been poisoning her husband to induce an illness).  Gilbert told her husband that she would have to inject saline into his arm to flush the vein. Glenn Gilbert's arms and chest became numb when he received the injection and he tried to pull away, but Gilbert pinned him against the wall with her hip and continued the injection.  The husband lost consciousness but survived without any outside medical intervention.  Gilbert allegedly explained away the incident by informing her husband that he had fainted at the sight of the needle.  The government contended that Gilbert actually injected her husband with potassium in hopes of inducing a fatal cardiac arrest.

      The reasoning in *Gilbert* is highly apposite to Mr. Dowdell's case.  The July 6 bad acts evidence concerns uncharged conduct and the case before the jury will concern

whether Mr. Dowdells prior contact with drug dealers near 180 Ruggles Street tends to show he is guilty of the crimes charged.  Likewise, *Gilbert* trial court found and the Court of Appeals agreed that by proving the uncharged conduct, the government would dramatically increase its chances of obtaining a conviction with regard to the charged conduct because of the inferences of propensity that would inevitably be drawn by the jury. In this evidentiary environment, the court found, the defendant simply could not get a fair trial on the charges that have actually been brought against her.  *Gilbert, supra.* The First Circuit reasoned, *inter alia,* that the trial court was rightly concerned about the extent to which the attempt on Glenn Gilbert would be litigated during the course of the trial.

    4.    *US v. Frankhauser*

The government may well note that the erroneous admission of prior bad acts does not always lead to reversal.   While it is true that an abuse of discretion is subject to harmless error analysis, the First Circuit has cautioned the government and the trial courts to "be wary of 'bad act overkill'.  *US v. Frankhauser*, *infra* (though not a reversal in favor of the defense, the *Frankhauser* court's unwillingness to reverse cannot be read to condone a bad government practice); see, also *US v. Arias-Montoya*, 967 F.2d 708 (1 Cir. 1992)(discussed, *infra*).   The mere fact that an erroneous admission of bad act evidence may escape reversal is poor rationale to argue for its admission.

In *Frankhauser,* defendant was accused of obstructing the investigation of Brockton-area skin head race crimes by holding himself out under different names as a paralegal in a legal defense organization.  The Defendant's prior convictions for

obstructing justice in a Lyndon LaRouche case ten years earlier had been admitted for limited purposes over defense objection. Defendant appealed:

> We review a trial court's determination that evidence of prior bad acts is admissible under Rules 404(b) and 403 of the Federal Rules of Evidence for abuse of discretion. *US v. Guyon,* 27 F.3d 723, 729 (1 Cir. 1994). It is well-established that evidence of prior bad acts is inadmissible to show bad character and consequent propensity to commit a crime, but may be admitted to prove, among other things, knowledge, intent, or absence of mistake or accident. Fed. R. Evid. 404(b); see also, e.g., *US v. Aguilar-Aranceta*, 58 F.3d 796, 798 (1 Cir. 1995); *US v. Arias-Montoya*, 967 F.2d 708, 709 (1 Cir. 1992). Although logically relevant, "propensity" or "bad character" evidence carries an unacceptable risk that a jury will convict for crimes other than those charged, or that it will convict, although uncertain of guilt, because a bad person deserves punishment. *Arias-Montoya*, 967 F.2d at 709; *US v. Moccia*, 681 F.2d 61, 63 (1 Cir. 1982). Such evidence therefore is inadmissible as a general rule, but may be admissible if it has "special" probative value beyond mere relevance that does not derive from "bad character" or "propensity." *Arias-Montoya*, 967 F.2d at 709; *Moccia*, 681 F.2d at 63.
>
> \* \* \* \* \*
>
> Our most serious concerns rest on the Rule 403 side of the scale. "If the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially overbalances any probative value, then the evidence must be excluded." *Aguilar-Aranceta*, 58 F.3d at 800 (internal quotation marks and citations omitted). The author of this opinion believes that although the LaRouche evidence [defendant's prior conviction] was probative in theory, the use and extent of it "progressed well beyond the necessary," *United States v. Pratt*, 73 F.3d 450, 452 (1 Cir. 1996), and that this raised a threat of confusion and unfair prejudice…. While it behooves us once again to warn the government and the district court against "the folly of bad act overkill," *Arias-Montoya*, 967 F.2d at 714, we all agree that in this case it is "highly probable" that whatever portion of the LaRouche evidence that was unnecessarily admitted "did not contribute to the verdict[s]" on Count I (conspiracy) and Count II (18 U.S.C. Section(s) 1512).

*US v. Frankhauser*, 80 F.3D 641 (1 Cir. 1996).

POINT II:
SPECIAL RELEVANCE
LIMITATIONS

A.  The July 6 Video Evidence Does Not Have Special Relevance

*US v. Smith*

To avoid questions of special relevance, this Circuit has upheld limitations on the introduction of uncharged misconduct to proof of elements of the offense or to disprove defenses raised by the defendant. In *US v. Smith, as one example,* the First Circuit denied defendant's unfair prejudice argument on the grounds that the trial court's pairing down of the evidence and its limiting instructions avoided unfair prejudice. *US v. Smith*, 292 F.3d 90 (1 Cir. 2002). In *Smith*, the trial had court carefully parsed the evidence at the pre-trial hearing and circumscribed the scope of the evidence the government could offer at trial. To allow the government to show defendant's dominion and control over the premises and rebut defendant's evidence that he did not reside in or control the place where the firearms were kept, the court limited the evidence to events days before the acts alleged in the indictment. The court also barred witnesses from testifying about defendant's instructions to keep the sink area clean to enable ready access to the drain to flush down drugs in case of a police raid. *Id.*

POINT III:

HEARSAY IDENTIFICATION

The July 6 video tape of drug dealer Robert White meeting TFA Joao Monteiro is unfairly prejudicial and should not be admitted. Not only is this tape prejudicial, it

13

contains an objectionable hearsay identification by White of "Smoke", alleged by the government to be Mr. Dowdell. Federal Rule of Evidence 801(d)(1)(c) provides that if a witness is available for cross examination, prior statements of identification are not hearsay. The hearsay identification in the case is analogous to this Circuit's decision in *Berrios* where the Court of Appeals upheld the exclusion of a defense witness offering hearsay identification of an alternative perpetrator of a drug transaction inconsistent with the government's version of events. See, *United States v. Berrios*, No. 95-2035 (1st Cir. 1998). Critical to the Court's decision was that there was no way to determine the basis of the hearsay witness identification other that the statement of another. That analysis and Rule 801(d)(1)(c) indicate that the Robert White's July 6 statements should not be admitted.

## CONCLUSION

For the reasons set forth above, defendant's motions (Docs. 30 & 31) should be granted.

Dated this 11th day of May, 2007 at Boston, Massachusetts.

> Respectfully submitted,
> DARRYL DOWDELL,
> By his Attorney,
>
> / s. /   Kevin L. Barron
> KEVIN L BARRON 550712
> 25 CHANNEL CNTR ST 408
> BOSTON MA 02210-3416
> Tel. No. 617.737.1555
> Fax No. 617.517.7711
> Cellular 617.407.6837
> kevin.barron@mac.com